# CONTRIBUTION, COLLECTION AND OVERPAYMENT POLICY
# OHIO CONFERENCE OF PLASTERERS & CEMENT MASONS COMBINED FUNDS

## RESTATED AND EFFECTIVE: MARCH 2020

### OVERVIEW
This policy outlines the contribution, collection and overpayment procedures adopted by resolution of the Board of Directors of the Ohio Conference of Plasterers & Cement Masons Combined Funds, Inc. The purpose of this policy is to ensure the Corporation effectively exercises the authority which it has been delegated and meets its obligations to monitor employer contributions and collect delinquencies through a reasonable, diligent and systematic process.

### OHIO CONFERENCE OF PLASTERERS & CEMENT MASONS COMBINED FUNDS, INC.
The Ohio Conference of Plasterers & Cement Masons Combined Funds, Inc. ("Corporation"), was formed in 2004 for the purpose of collecting, processing and distributing employee benefit plan contributions, dues and deductions required by collective bargaining agreements and other written participation agreements. The Corporation is operated through a Board of Directors with equal labor/management representation ("Directors").

Several labor organizations, fringe benefit funds and related entities ("Affiliates") have delegated collection authority to the Directors. Such authority includes, but is not limited to the collection of principal contributions, the assessment and collection of liquidated damages, interest, fees and costs, as well as the full authority to compromise claims on behalf of the constituent funds.

The Directors have retained the services of collection counsel ("Counsel") and a third party administrator ("Administrator") to oversee the daily collection operations of the Corporation. Neither the Administrator nor Counsel shall be vested with fiduciary authority, but will carry out such ministerial functions as instructed by the Directors. At all times the Directors shall employ reasonable, systematic and diligent procedures so as to comply with the applicable prohibited transaction exemptions.

### CONTRIBUTION OBLIGATION
The bargaining parties have entered into collective bargaining agreements requiring wage deductions and fringe benefit contributions to be made on behalf of members of the bargaining units. Certain other employers have signed participation agreements requiring contributions for persons who may not be covered by the terms of a collective bargaining agreement. This policy is enacted by the Directors in order to ensure compliance by participating employers with the obligations to make contributions to the Affiliates.

### EMPLOYER RECORDS
Each contributing employer is required to accurately record and report the hours worked by employees for which contributions or wage deductions are due. Per ERISA, an employer must maintain employee records sufficient to determine the benefits due or which may become due to such employees. When an employer's written payroll or employee records are missing,

inadequate or incomplete, the Directors shall make reasonable assumptions to determine and establish employer's contribution obligation. In such cases the burden of proof will shift to the employer to demonstrate compliance with the participation and/or collective bargaining agreement.

**EMPLOYER AUDITS**

As required by the Department of Labor, the Directors shall randomly audit the financial records of contributing employers to ensure compliance with the contribution obligations. The auditor engaged by the Directors may request any information deemed necessary to comply with AICPA standards and guidelines. The random audits will be conducted on the following basis:

| Contractors- Hours Contributed Per Calendar Year | Percentage of Such Contractors Audited Each Calendar Year |
|---|---|
| Up to 2,500 | Eight percent (8%) |
| 2,501 to 5,000 | Eight percent (8%) |
| Over 5,000 | Eight percent (8%) |

The Directors may request a "for-cause" payroll audit when determined, in their sole discretion, to be necessary. Any input from affiliated funds or the bargaining parties regarding the necessity of a for-cause payroll audit shall be submitted to the Directors.  To the extent practical and possible, each employer will be audited within the first year of its participation and following its final year of participation.  Unless deemed necessary by the Directors, no employer should be audited in consecutive years.

The cost of any audit will be paid by the Corporation unless there is a contribution deficiency greater than $500 owed for the audited period. In such case, the employer will be responsible for the reasonable costs of the audit.  Additionally, if the Directors are forced to take legal action to compel an audit, all costs, expenses and professional fees will be payable by the employer.

No contributing employer shall be subject to random payroll audit more than once in a calendar year. The Administrator will forward copies of all audit reports to the Directors and Counsel for review and possible action.

**CONTRIBUTION DUE DATES & DELINQUENCY PROCEDURES**

Unless a different date is specified in the governing Collective Bargaining Agreement, all wage deductions and contributions are due on the 15th day of the month following the month during which work was performed. Any contributions not received or postmarked by the 15th day of the month are considered delinquent unless the 15th is not a regular business day. If the 15th is not a regular business day, the contributions are due on the next regular business day.  Contributions delivered by courier or marked with a postage meter must be received by the 15th day of the month following the month during which work was performed.

All delinquencies will be handled in the following manner:

- As soon as possible following the due date, the Administrator will send a notice to the employer that advises of the delinquency and requests a copy of the employer's monthly remittance report.

- Unless a different date is specified in the governing Collective Bargaining Agreement, liquidated damages of ten percent (10%) shall be assessed if the payment is not received by the 20th day of the month following the month in which work was performed. Delinquent contributions are also subject to 1% monthly simple interest charges beginning on the 15th day of the month following the month in which contributions were initially due.

- If no payment has been made by the end of the month in which contributions were due, the Administrator shall refer the matter to Counsel. The Administrator will keep accurate records of all delinquencies and provide regular updates to the Directors and Counsel.

- The Directors shall meet at least quarterly to review all collection activity. The Administrator and Counsel shall provide written updates to the Directors at each collection meeting.

- The Directors, may elect to bring legal action at any time and may exercise any legal avenue for recovery including, but not limited to: bond claims; liens; administrative actions; ERISA claims; and any other right granted under state or federal law.  In the event legal action is necessary, the employer will be solely responsible for unpaid contributions, liquidated damages, interest, professional fees and such other legal or equitable relief as deemed appropriate.

- In the event of partial recovery, monies will be distributed on a pro-rata basis by the Directors to the Affiliates.

### DEFERRAL TO AFFILIATES' COLLECTION RULES
In the event of a discrepancy between the collection provisions outlined in this policy and an Affiliate's collective bargaining agreement, trust agreement and/or written collection policy, the Directors shall defer to the local rules established by the Affiliate.

### LIQUIDATED DAMAGES, INTEREST AND COSTS
The Administrator and Counsel shall monitor all collection costs, liquidated damages, interest, audit fees and/or attorney fees that remain unpaid after an employer satisfies the principal contributions owed. The Directors shall have full discretion to take any action deemed appropriate with respect to such unpaid amounts.

### APPEAL RIGHTS
An employer may appeal a determination of delinquency, the assessment of liquidated damages and/or interest, or any other collection-related matter to the Directors. All appeals must be in writing and will be heard at regularly scheduled meetings of the Directors. Such appeal will not

act to delay any legal or equitable action deemed necessary by the Directors. Appeals may be granted for reasonable cause and upon such terms and conditions as the Directors may approve.

**REFUND OF EMPLOYER OVERPAYMENTS**

To the extent permitted by ERISA, any material employer overpayment discovered by the Administrator in the routine processing of contributions shall be credited to the employer's account. Neither the Administrator nor the Directors have an affirmative obligation to identify employer overpayments.

Any employer that believes it has made a material overpayment of contributions as the result of a mistake of fact or law may submit a written request to the Administrator for a refund of the overpayment. The Administrator will promptly investigate the claim of overpayment and provide a summary of its findings to the Directors. The Directors may vote on whether to refund mistaken contributions which were paid in the one (1) year immediately preceding the date the employer provided a written request to the Administrator. No interest shall accrue on the amount of an overpayment. Should a request for refund be approved by the Directors, the refund of overpayment(s) will occur within 6 months from the date the Directors determine that an overpayment resulted from a mistaken contribution. Any benefits paid, premiums paid, and/or administrative expenses required to calculate the amount to be refunded shall be deducted from the refund.

**DISCRETION OF DIRECTORS WITH REGARD TO POLICY**

The Directors have sole and absolute discretion to interpret and apply the terms of this Policy. On a case-by-case basis, the Directors may deem it necessary and appropriate to deviate from this Policy in order to best fulfill the obligations of the Corporation. Such case-by-case deviations shall not require amendment of this Policy.

**Dated at Fairlawn, Ohio, this 4th day of March, 2020.**

**Chairman:**
_____
Chuck Wanat