# AGREEMENT

## BETWEEN THE

## OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION

## AND

OMNI FIREPROOFING COMPANY, INC.

9305 LeSaint Drive, Fairfield, Ohio 45014-5447

---

## INTERNATIONAL AGREEMENT

THIS AGREEMENT, executed as of __3/2/98__, (hereinafter referred to as "Effective Date" or "Anniversary Date") by and between the Operative Plasterers' and Cement Masons' International Association of the United States and Canada (hereinafter referred to as "Union" or "OP&CMIA") and __Omni Fireproofing Co Inc__, (hereinafter referred to as "Employer").

## ARTICLE I
## Scope and Purpose of Agreement

**Section 1.** This Agreement shall apply exclusively to construction work within the boundaries of the United States of America and the Dominion of Canada performed by the Employer, under its own name or the name of another, as a corporation, company, partnership, or other business entity, including a joint venture, wherein the employer, through its officers, directors, partners, owners or stockholders exercises directly or indirectly (including, but not limited to, management, control, or majority ownership through family members), management, control or majority ownership. The Employer agrees that in the event it becomes a party to a joint venture and all parties to the joint venture are signatories to an Agreement with this Union similar to this Agreement, or the Employer has the control and management of the joint venture, the terms of this Agreement will apply to such joint venture. In the event all parties to the venture are not signatories to an Agreement with this Union similar to this Agreement, or the Employer does not have control and management of the venture, the Employer will make every reasonable effort to have the terms of this Agreement made applicable to such venture. If the Employer is unable to do so, he will so notify the Union.

**Section 2.** The parties to this Agreement recognize that stability in wages and working conditions and competency of workmen are essential to the best interests of the industry and the public, and they agree to strive to eliminate factors which tend toward unstabilizing these conditions.

## ARTICLE II
## Recognition and Union Security

**Section 1.** The Employer recognizes the Union as the sole and exclusive bargaining representative for all Plasterers, Cement Masons, and Shophands in the employ of the Employer with respect to wages, hours and other terms and conditions of employment herein expressed in the performance of all work coming within the terms of this Agreement subject to the provisions of existing law.

**Section 2.** Each person (hereinafter referred to as "employee") who is now or hereafter employed by the Employer in a unit for which the Union or any local thereof is the collective bargaining representative, shall, as a condition of employment, become or remain a member of the Union in goodstanding on or before the 8th day following the commencement of such employment or following the effective date of this Agreement, whichever is the later, by paying uniform initiation fees and periodic dues as may be required by federal law. Such employees shall retain goodstanding in the Union for the duration of this Agreement, as a condition of employment. Failure of any employee to comply with provisions of this Article shall, upon request of the Union, result in the termination of such employee. This Article shall be effective to the extent permitted by applicable state and federal laws.

## ARTICLE III
## Hiring of Employees

**Section 1.** For the purpose of this Agreement the words "Employer's Home Local Union" shall mean the local union having jurisdiction in the area of the Employer's primary place of business.

**Section 2.** The Employer shall be permitted to request the first employee for work covered by this Agreement from the Employer's Home Local Union by notifying the Employer's Home Local Union of the need for an employee. The next employee required by the Employer shall be from the local union having jurisdiction in the area where the work is being performed. Thereafter, additional employees shall be hired on an alternating basis from the Employer's Home Local Union and the local union having jurisdiction in the area where the work is being performed. Upon such a request for employees, the Employer's Home Local Union and the local union having jurisdiction in the area where the work is being performed, agree to furnish at all times to the Employer duly qualified journeymen, including journeymen with special skills, where applicable, in a sufficient number in accordance with this Section as determined by the Employer to properly execute all work covered by this Agreement.

2

**Section 3.** In the event the Employer's Home Local Union or the local union having jurisdiction in the area where the work is being performed are unable to supply the requested number of qualified and competent journeymen and other employees as herein described, the International Union, upon request by the Employer's Home Local Union or the Employer, agrees to notify its other local unions of the availability of work and will request these local unions to refer such qualified employees to the Employer.

**Section 4.** If neither the Employer's Home Local Union nor the Union is able to supply competent and skilled employees satisfactory to the Employer within forty-eight (48) hours, the Employer may hire such persons wherever available, subject to the provisions of Article II and train employees to perform the work required, provided that the Employer, in writing, give the names, addresses and scope of work of such employees hired to the local union having jurisdiction where the work is being performed and International Union within forty-eight (48) hours of the employee's date of hire. It is understood that consideration for such employment and training shall be given to employees with previous experience in the Cement Masonry and Plastering industries.

**Section 5.** The selection of applicants for referral to jobs shall be on a non-discriminatory basis and shall not be based on, or in any way affected by, Union membership, by-laws, rules, regulations, constitutional provisions or any other aspect or obligation of Union membership, policies, or requirements; no distinction in treatment should be made based on religion, color, age, national origin, sex, handicap status, Vietnam era, or disabled Veteran's status, or on any other basis prohibited by law.

**Section 6.** Before any employee performs work in the jurisdiction of a local union, other than the employee's home local union, the employee shall notify the local union in whose jurisdiction the work is performed and provide all pertinent information including the employee's international registration number.

# ARTICLE IV
## Supervision and Union Representatives

**Section 1.** The need for, designation of and the determination of the number of employees and foremen, if any, is solely the responsibility of the Employer. However, it is understood that in the selection of foremen the Employer will give consideration to the qualified employees available in the local area where the work is being performed.

**Section 2.** Authorized representatives of the local union and International Unions shall have access to jobs where employees covered by this Agreement are employed, providing they do not unnecessarily interfere with the Employees or cause them to neglect their work, and further provided such Union representative complies with Employer and customer rules and regulations.

3

**Section 3.** A Steward shall be a working journeyman designated by the local union who shall, in addition to his work as a journeyman, be permitted to perform during working hours such of his Union duties as cannot be performed at other times. The Union agrees that such duties shall be performed as expeditiously as possible and the Employer agrees to allow the Steward a reasonable amount of time necessary for the performance of such duties. Stewards shall receive the regular journeyman's rate of pay.

**Section 4.** It is understood and agreed that the Steward's duties shall not include any matters relating to referral, hiring, laying off of employees or any other supervisory function.

## ARTICLE V
## Wages and Working Conditions

**Section 1.** When the Employer enters an area where wages, working conditions and fringe benefits affecting employees have been negotiated and legally established pursuant to bona fide collective bargaining, the Employer will be presented with such evidence by the Union and the Employer will conform his operations accordingly. The Employer will be required to furnish any compliance bond that may be specified in the Local Agreement.

**Section 2.** For all employees covered by this Agreement, except as provided below in Section 5 for travelers, wage rates, worker's compensation, hours of work, shifts, shift premiums, overtime, overtime premiums, reporting pay provisions, pay differentials and contributions or deductions for plans, programs or funds, for union dues, health and welfare, training, vacations and holidays, supplemental unemployment benefits, sick pay, severance pay and industry promotion shall be in accordance with the established and bona fide local union agreements where the work is being performed; provided, however, that if the provisions of said local union agreements are in conflict with this Agreement, this Agreement shall prevail; and provided further, that all payments and contributions to the National Joint Trust Funds shall be made in accordance with the provisions of Articles XIII and XIV of this Agreement, without regard to the provisions of any local union agreements.

**Section 3.** In agreeing to pay to fringe benefit funds for employees established in bona fide local union agreements and the Cement Masons Training Fund or Plasterer Training Fund, the Employer hereby adopts and agrees to be bound by the written terms of such legally established local union and Cement Masons Training Fund or Plasterer Training Fund trust agreements and rules and regulations, as enacted or subsequently amended, specifying the detailed basis on which payments are to be made into, and benefits paid out of, such trust funds. The Employer authorizes the parties to such local union trust agreements and Cement Masons Training Fund or Plasterer Training Fund to appoint Trustees and successor Trustees to administer the trust funds and hereby ratifies and accepts the Trustees so appointed and the terms and conditions of the trust documents, as enacted or subsequently amended; however, no Employer is required hereby to assign his bargaining rights

4

or become a member of any employer group or association as a condition for making such contributions.

**Section 4.** When an employee is assigned to work outside his home local union, and when wage rates differ from those of his home local union, and do not conflict with this Agreement, the Employer and local union where the work is being performed may mutually agree, in writing, to any wage rate no less than the lowest wage rate provided in established and bona fide local union agreements where the work is being performed.

**Section 5.** All of the legally negotiated fringe benefit contributions, or deductions under the employee's home local union's agreement, shall be paid to the Trustees of the fringe benefit funds of his home local union.

**Section 6.** In areas where no bona fide local union agreement exists, the Employer and Union shall negotiate the terms and conditions of employment, including wage rates and fringe benefit contributions.

**Section 7.** No employee shall receive any change in union classification or any reduction in basic wage rates or fringes in their present employment as a result of this Agreement.

**Section 8.** If the Employer fails to make contributions to the local union trust funds set forth in this Agreement, the Employer shall be liable for costs of collecting the payments together with attorneys and audit fees, interest at the highest rate permitted by the state in which the delinquency occurred, and such late payment fees and liquidated damages as may be assessed by the local union trustees. If an Employer fails to make contributions to any of the funds as required by this Agreement, such failure shall be grounds for termination of this Agreement upon sixty (60) days written notice by the International Union with such termination being effective sixty (60) days after notice.

**Section 9.** Overtime wage rates shall be paid for at time and one-half the regular rate, unless a higher overtime rate is provided for in the local collective bargaining agreement in the area in which the work is being performed, in which case the higher overtime rate shall be paid.

**Section 10.** Shift work may be performed at the option of the Employer. However, when shift work is performed it must continue for a period of not less than three consecutive work days. The day shift shall work a regular eight-hour shift. The second shift shall receive eight hours' pay for seven and one-half hours' work; the third shift shall receive eight hours' pay for seven hours' work. Where collective bargaining agreements in the area in which the work is being performed provide higher payments, such provisions shall prevail, provided that such shift time agreement has been in force and effect for at least two or more years.

**Section 11.** All work of the employer shall be performed under mutually provided safety conditions which must conform to state and federal regulations. It shall be a requirement of the Employer to conform to safety regulations and measures as provided.

**Section 12.** This Agreement shall supersede any provision of a local collective bargaining agreement contrary to, or in conflict with, this Agreement, or contrary to the intent and meaning of this Agreement.

## ARTICLE VI
## Apprentices

**Section 1.** The apprentice wage rates shall be the wage provided in the local agreement in the territory of the local union having jurisdiction in the area where the work is being performed. The responsibility for selecting and employing the required number of apprentices and the administration of the local apprentice system shall be governed by the terms and procedure provided in the local agreement of the local union having territorial jurisdiction where the job is performed.

## ARTICLE VII
## Jurisdiction and Jurisdictional Disputes

**Section 1.** It is agreed that this collective bargaining agreement covers all work within the work jurisdiction of the OP&CMIA as presently set forth in its International Constitution under the sections dealing with Plasterers' and Cement Masons' jurisdiction. The Employer agrees to recognize the jurisdictional claims of the Union that have been established by agreements of record with other crafts, awards contained in the Green Book, or as a result of decisions by the National Joint Board for Settlement of Jurisdictional Disputes.

**Section 2.** The Employer and the Union severally agree to be bound by all terms and provisions of the plan establishing procedures for the resolution of jurisdictional disputes in the construction industry known as the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry (hereinafter referred to as the "Plan"). In particular, the parties agree to abide by those provisions of the Plan requiring compliance with the decisions and awards of the Administrator, arbitrator or National Arbitration Panels established under the Plan, and to fulfill the obligations of the Employer as set forth in the Plan and under this Agreement.

**Section 3.** The Union and the Employer shall cooperate to the fullest extent in the settlement of jurisdictional disputes. There shall be no stoppage of work or slowdown arising from any jurisdictional dispute.

## ARTICLE VIII
## Management Functions

**Section 1.** The Employer shall not be restricted in the selection of the kind of source of materials, supplies or equipment used.

**Section 2.** The Employer shall determine the competency and qualifications of his employees and he has the right to discharge any employee for just and sufficient cause. The Employer shall determine the number of employees required for the job and shall be responsible for selecting the employees to be laid off.

## ARTICLE IX
## Subcontractors

**Section 1.** The Employer agrees not to sublet or contract out any work covered herein to be performed on the construction site unless the contractor to whom the work is sublet agrees to conform his operations to the terms of this Agreement.

**Section 2.** When grievances cannot be settled locally by the Steward and the Employer's representative in charge, the matter shall be taken up at the job site with the representative or agent of the Employer directly by the representative of the Union.

**Section 3.** In the event the grievance cannot be settled as above provided within three (3) days after it arises, it shall, upon request of either party, be submitted to the General President of the Union, or his designated representative, and a representative selected by the Employer for consideration and settlement.

**Section 4.** In the event the grievance cannot be settled as above provided within five (5) days after submission to the International Union and the Employer, the parties agree to process such dispute through an impartial arbitrator.

**Section 5.** In the event that a matter is to be submitted to an impartial arbitrator, one may be selected by agreement of the Union and the Employer. If the Union and Employer cannot agree on an impartial arbitrator within a period of ten (10) days, then the Union and Employer shall request the Federal Mediation and Conciliation Service to submit a panel of five persons for selection as an impartial arbitrator. If the Union and Employer cannot agree on one of the persons named on the panel, then the impartial arbitrator shall be selected by striking from the list a name alternately, until one name remains.

**Section 6.** The authority of the impartial arbitrator shall be limited to the construction and enforcement of the express language of this Agreement as applied to the specific grievance or issue stated in the request for arbitration. The impartial arbitrator shall have no authority or

7

jurisdiction, directly or indirectly, to add to, subtract from, change, modify, or supplement any of the specific provisions of this Agreement. The decision of the impartial arbitrator shall be final and binding on both parties.

**Section 7.** One-half of the expense of the impartial arbitrator shall be borne by the Union and the other half by the Employer. Any grievance which is not carried by the grieving party to the next step of the grievance procedure within the time prescribed shall be deemed to have been abandoned if upon receipt of notice of intent to invoke this paragraph from the responding party the grieving party fails to proceed to the next step within five (5) working days. Thereafter, no further claim for adjustment of such grievance shall be made unless the time limits are extended by mutual agreement of both parties. However, should the responding party fail to attempt settlement at any step, the dispute will automatically proceed to the next step at the expiration of the specified time period.

**Section 8.** The above stated provisions for arbitration of questions or disputes arising under this Agreement shall not be applicable to questions or disputes relating to the payment or non-payment by contractors of wages and the agreed upon amounts into benefit funds. In case of such questions or disputes the Union may order employees to cease working for any job or jobs of the Employer or to take other legal or economic action against the Employer, in addition to its rights to use the grievance procedure.

## ARTICLE XI
## No Strike - No Lockout

**Section 1.** During the term of this Agreement, the Union and Employer each agrees that there shall be no strikes, work stoppages or lockouts by members of the Union or by the Employer over disputes over the terms and conditions of this Agreement. This no strike, no lockout commitment is based upon agreement by both parties to be bound by the grievance and arbitration provisions of this Agreement in Article X.

## ARTICLE XII
## Saving Clause

**Section 1.** Where there is conflict in meaning, interpretation, or application between this Agreement and local union agreements, this Agreement shall apply.

**Section 2.** If any Article or provision of this Agreement shall be declared invalid, or unenforceable by any competent authority of the executive, legislative, judicial, or administrative branch of the federal or any state or provincial government, the Employer and the Union shall suspend the operation of such Article or provision during the period of its invalidity and shall substitute, by mutual consent, in its place and stead, an Article or provision which will meet the

8

objections to its validity, and which will be in accord with the intent and purpose of the Article or provision in question.

**Section 3.** If any Article or provision of this Agreement shall be held invalid, inoperative, or unenforceable by operation of law, or by any of the above-mentioned tribunals of competent jurisdiction, the remainder of this Agreement or the application of such Article or provision to persons or circumstances other than those to which it has been held invalid, inoperative, or unenforceable shall not be affected thereby.

**Section 4.** A signer of this Agreement is not required to sign any local union agreements. If requested, a signer of this Agreement must subscribe in writing to the local union trust agreement.

# ARTICLE XIII
## National Joint Trust Fund
## to Promote Training in the
## Cement Masonry, Asphalt and Composition Trade

**Section 1.** The Employer agrees to pay the National Joint Trust Fund to Promote Training in the Cement Masonry, Asphalt and Composition Trade (hereinafter referred to as "Cement Mason Training Fund") five cents (.05) per hour for each hour of work performed by employees covered by this Agreement whose primary OP&CMIA classification is "Cement Mason." Contributions for employees with no primary OP&CMIA classification shall be made to the Cement Mason Training Fund. The Employer agrees that it shall make said payments to the Cement Mason Training Fund in accordance with the Cement Mason Training Fund's Agreement and Declaration of Trust and Rules and Regulations, as enacted or subsequently amended, and that said payments to the Cement Mason Training Fund shall be made monthly on or before the twentieth day of the month succeeding that for which payment is made or as otherwise directed by the Cement Mason Training Fund's Agreement and Declaration of Trust and Rules and Regulations as enacted or subsequently amended. All payments to the Cement Mason Training Fund shall be sent to the Administrator of the Cement Mason Training Fund. If requested, the Employer agrees to sign a standard participation agreement.

**Section 2.** If the Employer fails to make contributions to the Cement Mason Training Fund as required, the Employer shall be liable for all costs of collecting the payments together with attorney's and audit fees, interest at the highest rate permitted by the state in which the delinquency occurred, and any late payment fees and liquidated damages.

**Section 3.** Money received as a result of said payments shall be administered by the Trustees and Administrator of the Cement Mason Training Fund in accordance with its Agreement and Declaration of Trust and Rules and Regulations, as enacted or subsequently amended.

**Section 4.** The aforesaid payments to the Cement Masons Training Fund shall be in addition to, and not in lieu of, any payments made into any local, area or state or provincial wide apprentice or training fund, or similarly denominated fund in accordance with any local, area, state or provincial wide agreement.

**Section 5.** The Administrator of the Cement Mason Training Fund shall furnish the Employers upon request with copies of its Agreement and Declaration of Trust and Rules and Regulations.

# ARTICLE XVIII
## National Plastering Industry's
## Joint Apprenticeship Trust Fund

**Section 1.** The Employer agrees to pay the National Plastering Industry's Joint Apprenticeship Trust Fund (hereinafter referred to as "Plasterer Training Fund") five cents (.05) per hour for each hour of work performed by employees covered by this Agreement whose primary OP&CMIA classification is "Plasterer." Contributions for employees with no primary OP&CMIA primary classification shall be made to the Plasterer Training Fund. The Employer agrees that it shall make said payments to the Plasterer Training Fund in accordance with the Plasterer Training Fund's Agreement and Declaration of Trust and Rules and Regulations, as enacted or subsequently amended, and that said payments to the Plasterer Training Fund shall be made monthly on or before the twentieth day of the month succeeding that for which payment is made or as otherwise directed by the Plasterer Training Fund's Agreement and Declaration of Trust and Rules and Regulations as enacted or subsequently amended. All payments to the Plasterer Training fund shall be sent to the Administrator of the Plasterer Training Fund. If requested, the Employer agrees to sign a standard participation agreement.

**Section 2.** If the Employer fails to make contributions to the Plasterer Training Fund as required, the employer shall be liable for all costs of collecting the payments together with attorneys' fees and audit fees, interest at the highest rate permitted by the state in which the delinquency occurred, and any late payment fees and liquidated damages.

**Section 3.** Money received as a result of said payments shall be administered by the Trustees and Administrator of the Plasterer Training Fund in accordance with its Agreement and Declaration of Trust and Rules and Regulations, as enacted or subsequently amended.

**Section 4.** The aforesaid payments to the Plasterer Training Fund shall be in addition to, and not in lieu of, any payments made into any local, area or state or provincial wide apprentice or training fund, or similarly denominated fund in accordance with any local, area, state or provincial wide agreement.

10

**Section 5.** The Administrator of the Plasterer Training Fund shall furnish the Employers upon request with copies of its Agreement and Declaration of Trust and Rules and Regulations.

## ARTICLE XV
## Duration and Termination

**Section 1.** This Agreement shall be in full force and effect for a period of one year from the Anniversary Date and shall continue from year to year thereafter unless notice of termination or modification is given in writing by either party to the other at least sixty (60) days prior to the Anniversary Date with such termination to be effective on the Anniversary Date.

**Section 2.** In the event that any signatory Employer has performed fewer than 2,000 hours of work subject to this Agreement in any six month period, the Union may terminate this Agreement with respect to such Employer by giving sixty (60) days written notice of termination with such termination to be effective sixty (60) days after notice.

**Section 3.** In the event a notice of proposed modification is given by either the Union or the Employer to the other and agreement of a modified Agreement is not reached by the Anniversary Date, both the Union and the Employer agree to continue to work under the terms of this Agreement.

IN WITNESS WHEREOF, the parties hereto execute this Agreement as of the day and year noted in the Effective Date above.

| | |
|---|---|
| **OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION OF THE UNITED STATES AND CANADA** | Omni Fireproofing Co. Inc<br>**EMPLOYER** |
| By: _[signature]_<br>John J. Dougherty, General President | By: _[signature]_ |
| By: _[signature]_<br>Patrick D. Finley, Gen. Sec-Treasurer | By: _____ |

11