# OPCMIA LOCAL 132
# PLASTERERS AGREEMENT



## July 1, 2021 through June 30, 2024

# PLASTERERS OHIO LOCAL #132 AGREEMENT

## Index

Witnesseth.................................................................................................................Page 1
Declaration of Principles..........................................................................................Page 1
Geographical Area ....................................................................................................Page 1
Section 1 Negotiating Agent.....................................................................................Page 1
Section 2 Purpose of Agreement...............................................................................Page 2
Section 3.....................................................................................................................Page 2
Section 4.....................................................................................................................Page 2
Section 5.....................................................................................................................Page 3
Section 6.....................................................................................................................Page 3
Section 7.....................................................................................................................Page 4
Section 8.....................................................................................................................Page 4
Section 9 Hours of Work ..........................................................................................Page 4
Section 9 Shift Work.................................................................................................Page 4
Section 9 Breaks .......................................................................................................Page 5
Section 10...................................................................................................................Page 5
Section 11...................................................................................................................Page 5
Section 12...................................................................................................................Page 6
Section 13...................................................................................................................Page 6
Section 14 Pension Fund...........................................................................................Page 6
Section 14 Annuity Fund ..........................................................................................Page 6
Section15....................................................................................................................Page
Section 16...................................................................................................................Page
Section 17...................................................................................................................Page
Section 18...................................................................................................................Page
Section 19...................................................................................................................Page
Section 20...................................................................................................................Page
Section 21...................................................................................................................Page
Section 22...................................................................................................................Page
Section 23...................................................................................................................Page
Section 24...................................................................................................................Page
Section 25...................................................................................................................Page
Section 26...................................................................................................................Page
Section 27...................................................................................................................Page
Section 28...................................................................................................................Page
Section 29...................................................................................................................Page
Section 30...................................................................................................................Page
Section 31...................................................................................................................Page

# Index Cont.

Section 32......................................................................................................................Page
Section 33......................................................................................................................Page
Section 34......................................................................................................................Page
Section 35......................................................................................................................Page
Section 36......................................................................................................................Page
Section 37......................................................................................................................Page
Section 38......................................................................................................................Page
Section 39......................................................................................................................Page
Section 40......................................................................................................................Page
Section 41......................................................................................................................Page
Section 42......................................................................................................................Page
Section 43......................................................................................................................Page
Section 44......................................................................................................................Page
Section 45......................................................................................................................Page
Section 46......................................................................................................................Page
Section 47......................................................................................................................Page
Labor / Management Signatures ...................................................................................Page
Employer Signatures.....................................................................................................Page

# PLASTERERS OHIO LOCAL #132 AGREEMENT

**WITNESSETH:** This AGREEMENT is negotiated by and between the PLASTERER EMPLOYERS DIVISION, WALLS & CEILING CONTRACTORS ASSOCIATION of Greater Cincinnati, party of the first part, as Negotiating Agent only for Employers of plasterers, within the area as defined herein, hereinafter referred to as the EMPLOYER, and LOCAL UNION #132, OPERATIVE PLASTERERS AND CEMENT MASONS INTERNATIONAL ASSOCIATION, party of the second part, hereinafter referred to as the Union.

## DECLARATION OF PRINCIPLES

1.  There shall be no limitation as to the amount of work an Employee shall perform during the working day.
2.  There shall be no restriction of the use of machinery, tools or laborsaving devices, provided such machinery is safe for use by Employees.
3.  There shall be no restriction of the use of any raw or manufactured material except prison made.
4.  There shall be no interference by the Union with Employer's workers during working hours, except the Business Agent may consult with the Superintendent, Foreman, or Steward, when necessary. The Business Agent shall be allowed on the job at all times. The Employer agrees to give all assistance to the Union Agent in gaining entrance to a plant or project where plasterers are employed, providing the Agent complies with the rules and regulations governing the entrance to the plant or project.
5.  The Employer is at liberty to employ and discharge whomsoever he/she sees fit.
6.  The Employee is at liberty to work for whomsoever he/she sees fit, but under all circumstances, he shall demand and receive the wages stipulated in this Agreement.
7.  The Employer shall not collect dues or initiation fees for the Union, and shall not, in any way, act as agent of the Union, except as provided in Section XV.

## GEOGRAPHICAL AREA

The geographical area for the purposes of this Agreement shall include Hamilton, Clermont, Brown, Butler, Warren and Highland Counties in Ohio; Boone, Bracken, Campbell, Gallatin, Grant, Harrison, Kenton, Owen, Pendleton, Robertson, Bourbon, Clark, Fayette, Jessamine, Madison, Pulaski, Scott and Woodford Counties in Kentucky; and in the State of Indiana the Counties of Dearborn, Ohio, Ripley, Switzerland and the southern half of Franklin County south of a line running east and west established south of Brookville.

## SECTION 1

**NEGOTIATING AGENT:** This Agreement is negotiated by the Plasterer Employers Division, Walls & Ceiling Contractors Association of Greater Cincinnati as NEGOTIATING AGENT only for its present and future members, hereinafter referred to as "Employers." For any breach of this contract the liability of said members shall be several, not joint; and the liability of the Plasterer Employers Division, Walls & Ceiling Contractors Association shall be only that of Negotiating Agent acting, without liability, for its individual members.

SECTION 2

**PURPOSE OF AGREEMENT:** The purpose of this Agreement is to set out the conditions under which Employees shall work and the Employers shall hire such Employees.
No other set of rules or regulations, whether written or implied, shall have any bearing on the relationship between the signatories of this Agreement.
No other rules or regulations shall be adopted by either party without agreement by the Joint Conference Committee.

SECTION 3

**LEGALITY OF AGREEMENT:** Any words or phrases used herein shall be construed according to their strict and primary acceptance unless from the content of this instrument, and the intention of the parties collected from it, they appear to have been used in a different sense, or unless in their strict sense they are incapable of being carried into effect.

This Agreement shall in all respects be construed according to and be governed by law existing at any time during the life of this Agreement, and in the event any provision herein contained should be held to be a violation of law on the part of either party hereto by any federal, state, or municipal law or regulation thereunder now in force or hereinafter promulgated, enacted and effective, shall have no force and effect for the duration of such voidance, it being intended, however, that the remaining provisions hereof shall insofar as possible be unaffected and shall continue in full force and effect.

SECTION 4

**JURISDICTION OF WORK:** The work to be performed under this Agreement will be that of PLASTERERS as determined by the National Labor Relations Board or the Impartial Jurisdictional Disputes Board.

1. The Employer agrees to assign the application of aqueous resinous emulsion type bonding agents to the Employees covered by this Agreement, unless there is a contrary jurisdictional decision.

2. If any mechanical means is used in the gauging of lime for any finish coat, the mixing shall be gauged by a member of the crew who is to apply the respective gauging. This clause applies on jobs where cementitious and fibrous type fireproofing is the material being applied. There shall be an equal number of plasterers to nozzles used.

3. If the Employer elects to prefabricate certain items that normally have been done in the field by plasterers, such work shall be done by craftsmen covered by this Agreement. This does not preclude the use of composite crews.

4. Pointing and taping of drywall surfaces, acoustical finishes and imitation acoustical finishes on concrete and drywall surfaces may be the work of Plasterers under this Agreement.

5. When the installation of insulation board for EIFS systems is part of the contract of an Employer party to this Agreement, the complete installation process shall be performed by craftsmen covered by this Agreement.

6. The parties hereto agree to be bound within the territorial jurisdiction of this Agreement by the terms and provisions of the Agreement dated June 1, 1984

establishing the Plan for Settlement of Jurisdictional Disputes in the Construction Industry. In particular, the parties agree to be bound by those provisions of the Agreement requiring compliance "with the decisions and awards of the Board, Appeals Board or Hearings Panels." Decisions rendered under the Plan shall be final, binding and conclusive on the parties.

## SECTION 5

**UNION SECURITY:** The Employer agrees to require membership in the Union, as a condition of continued employment of all Employees covered by this Agreement, within eight (8) days following the beginning of such employment or the effective date of this Agreement, whichever is the later, provided the Employer has reasonable ground for believing that membership is available to such Employees on the same terms and conditions generally applicable to other members and that membership is not denied or terminated for reasons other than the failure of the Employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining the membership.

The Union agrees that it shall not allow its members to accept or to engage in employment with any contractor not signatory to an Agreement with the Union.

In the interest of providing an opportunity of employment for all qualified Plasterer Journeymen while at the same time securing a fair distribution of employment for those Journeymen who reside within the area covered by this Agreement it is agreed that at all times during the progress of any and all jobs, there will be a local Plasterer on all jobs and 50% of the Plasterers employed by the Contractor, including the foreman, plus the odd worker if any, shall have been residents of the area covered by the Agreement for the six months preceding employment. The remaining 50% of the work force may be residents of the area or non-residents, at the discretion of the Contractor. Apprentices with one or more years of experience will be counted in determining the 50-50 ratio.

## SECTION 6

**JOINT GRIEVANCE COMMITTEE:** There shall be a Joint Grievance Committee of not more than four (4) members with two (2) designated by the Labor Relations Division, Walls and Ceiling Contractors Association, Cincinnati AGC and two (2) designated by Operative Plasterers and Cement Masons, Local Union 132.

The Joint Grievance Committee shall settle all disputes related to an alleged violation of a term of this agreement, between the parties to this Agreement, except for jurisdictional disputes.

When either, party to this Agreement requests a meeting of the Joint Grievance Committee, such meeting shall be held within five (5) working days.

In the event the Joint Grievance Committee cannot settle the dispute within one week after its first meeting on the dispute, an impartial arbitrator shall be selected by the parties to the dispute to render a decision that shall be final and binding on the parties. In the event the parties cannot agree to the impartial umpire within one week, the American Arbitration Association procedures shall be followed in selecting an arbitrator. The arbitrator shall make his/her decision within the terms and scope of the Agreement, and he/she shall not add to, or subtract from, or modify this Agreement in any way. The expense of the arbitrator shall be borne equally between the individual

Employer involved in the dispute and the Union.

Pending the settlement of any dispute, there shall be no work stoppage, nor shall there be any work stoppage for any cause or dispute not brought before the Joint Grievance Committee.

## SECTION 7

**TRANSFERRING EMPLOYEES:** Employees shall not be transferred from one Employer to another without the consent of the Employer for whom they are working.

## SECTION 8

**DIRECT EMPLOYMENT:** The Employer shall not be required to hire a member of the Union through the Union, or through its representatives, but may employ them direct.

## SECTION 9

**HOURS OF WORK:**

1. The week shall begin on Monday A.M. and end Friday P.M.
2. Eight (8) hours shall constitute a day's work between 7:00 A.M. and 4:30 P.M. Four consecutive days ten (10) hours per day worked Monday through Friday between the hours of 6:00 A.M. and 6:00 P.M. daily constitutes an alternate work week, at the regular hourly rate. This change may be used only when mutually agreed upon between the Employee, Employer and the Union.
3. Forty (40) hours shall constitute a week's work.
4. Starting time shall be by mutual agreement between the Employer and the Union.
5. Quitting time shall be such as to provide eight (8) hours work each day, plus one-half (1/2) hour for lunch.
6. The hours of work may be changed by mutual consent of the Business Representative, contractor and the workers on the job for weather conditions.

**SHIFT WORK:** Shift work is permitted provided the Employer first notifies the Business Representative of Local #132 of the reason for such shift work. When two or three shifts are worked, Employees on the first and second shifts shall be paid at the rate of eight (8) hours pay for eight (8) hours work, Employees on the third shift shall be paid at the rate of eight (8) hours for seven (7) hours work. No Employee shall work on more than one shift in any twenty-four hour period. The first shift is considered normal working hours as otherwise provided herein. All other hours are second and third shift. An Employee who is provided with less than three and one-half hours of work on a second or third shift shall be paid for four hours. An Employee who is provided with three and one-half hours of work or more but less than seven hours on a second or third shift shall be paid for eight hours. Shift work must be of at least three days duration in order to qualify as shift work.

When a job, because of occupancy by an owner or tenant, cannot be performed during regular working hours, the work on this job may be performed outside of regular working hours at the applicable shift rate provided each day is a full day's pay. Twenty-four (24) hours' notice must be given to the Business Representative.

**BREAKS:** A ten (10) minute break will be given to all Employees after the first two (2) hours of the start time.

## SECTION 10

**TRAVELING EXPENSE:** (1) Employees shall not suffer loss of pay due to moving from shop to job, or job to job, during the regular workday.

**Employees will receive a Fifteen Dollar ($15.00) per day per diem when required to stay out of the jurisdictional area in other living conditions due to the Employers work load out of the jurisdictional area. This is to be paid by the Employer on the weekly check.**

## SECTION 11

**WAGES:** The hourly rate of wages to be paid Plasterers from July 1, 2021 through June 30, 2024 shall be as follows:

Foreman, ..........................................................$ 27.65
Journeyman.....................................................$ 26.65

Additions increases to be allocated as needed are:
July 1, 2022 .....................................................$ 1.00
July 1, 2023 .....................................................$ 1.25

The rate of wages for apprentices effective June 22, 2021:

| | | |
|---|---|---|
| 1st | 800 hours ........................................ | 70% of journeyman's rate |
| 2nd | 800 hours........................................ | 74% of journeyman's rate |
| 3rd | 800 hours ........................................ | 78% of journeyman's rate |
| 4th | 800 hours........................................ | 82% of journeyman's rate |
| 5th | 800 hours ........................................ | 86% of journeyman's rate |
| 6th | 800 hours........................................ | 90% of journeyman's rate |
| 7th | 800 hours........................................ | 94% of journeyman's rate |
| 8th | 800 hours........................................ | 98% of journeyman's rate |

## SECTION 12

**EDUCATION FUND:** The Employer agrees to pay a total of Seventy cents ($0.70) per hour for each hour worked by each Employee covered by this Agreement into the Plasterers Joint Apprenticeship Committee Fund. The fund shall be jointly administered by three representatives from Plasterers Local Union #132 and three representatives from the Plasterer Employers Division, Walls & Ceiling Contractors Association in accordance with the terms and provisions of the Trust Agreement and Declaration of Trust dated March 11, 1960.

July 1, 2021 .....................................................$ 0.70

## SECTION 13

**INTERNATIONAL TRAINING FUND:** The Employer(s) signatory to this Collective Bargaining Agreement hereby agree to make contributions in accordance with the wage and fringe benefit schedule contained in this Article to the OPCMIA International Training Fund (OPCMIA ITF), for all hours worked by all employees covered by this Agreement. Each signatory Employer agrees to be bound by the written terms of the

trust agreements specifying the detailed basis on which payments are to be made into, and benefits paid out of the OPCMIA ITF, as well as any amendments to that trust agreement. Each Employer further agrees to be bound by all rules, regulations and procedures adopted by the OPCMIA ITF Trustees and all actions taken by them within the scope of their authority. Each signatory employer also authorizes the parties to the OPCMIA ITF trust agreement to appoint Trustees and successor Trustees to administer the trust funds and hereby ratifies and accepts the Trustees so appointed as if made by the Employer.

July 1, 2021 ........................................................$ 0.05

## SECTION 14

**PENSION FUND:**  Effective July 1, 2021, the Employer agrees to contribute to the Plasterers Local Union #1 Pension Fund Eight dollars and Twenty-Five cents ($8.25) per hour for each hour worked by each Employee covered by the terms of this Agreement. The pension contribution for apprentices will be per hour paid on hours worked. (Proviso:  This contribution shall not be paid for apprentices until completion of the first 1,800 hours of apprenticeship.)  This Fund shall be administered in accordance with the terms and provisions of the Agreement and Declaration of Trust dated June 1, 1965.  Said Agreement is herein incorporated by reference and expressly made a part of this contract. Payments to this Fund shall be in accordance with Section XVII of this Agreement.

The Union agrees that any Employer, who is not obligated by an Agreement to contribute to the pension fund, shall pay an hourly rate equal to the established wage rate of this Agreement plus the hourly rate of contribution to the pension fund.

|  | Journeymen | Apprentices |
|---|---|---|
| July 1, 2021 | $ 8.25 | $ 7.25 |

**ANNUITY FUND:**  The Operative Plasterers' and Cement Masons Profit Sharing Annuity Fund was established June 22, 2004.  Mandatory contributions begin July 1, 2021, One Dollar ($ 1.00) per hour.
July 1, 2021 ........................................................$ 1.00

## SECTION 15

**HEALTH AND WELFARE FUND:**  Effective July 1, 2021, the Employer agrees to contribute Five dollars and Eighty cents ($ 5.80) per hour for each hour worked by each Employee, to the Ohio Conference of the Plasterers and Cement Masons Health and Welfare Fund covered by the terms of this Agreement. This fund shall be administered in accordance with the terms and provisions of a separate Declaration of Trust. Payments to this Fund shall be in accordance with Section ~~17~~ 19 of this Agreement.

July 1, 2021 ........................................................$ 5.80

## SECTION 16

**CONSTRUCTION ADVANCEMENT PROGRAM OF GREATER CINCINNATI:** It is understood that Allied Construction Industries of Cincinnati ("Allied Construction Industries"), an Ohio corporation not for profit, is establishing, effective January 1, 1968, by a Declaration of Trust, a fund (herein called the "Fund") to put into effect the Construction Advancement Program of Greater Cincinnati, the purposes of such

program to be to generally promote and improve the construction industry in the Greater Cincinnati area, including, without limiting the generality of the foregoing, development of markets, improvement of relations of Employers with others (including the public, architects, suppliers and labor), educational programs, the preparation and distribution of collective bargaining agreements (including pension, health and welfare plans), providing services in connection with the administration of pension, health and welfare plans, and other matters of general benefit to the industry; provided that the activities shall not include the influencing of legislation, the providing of financial aid to Employers or Employees during work stoppages, or making any payments, except for services actually rendered, in connection with the program to any members or officers of Allied Construction Industries or of any other Employer contributing to the Fund. It is understood that each Employer will be furnished with a copy of the Declaration of Trust upon request and that, subject to the foregoing limitations; such Declaration of Trust may be amended from time to time by Allied Construction Industries.

During the continuation of this Agreement, commencing June 1, 2016, each Employer a party hereto shall pay to the Fund ten cents ($0.05) for each hour worked by each of the Employees who are in the collective bargaining unit covered by this Agreement.

Each Employer shall pay the contribution to the Fund monthly on or before the 15th of each month on account of hours for which it compensated such Employees during the preceding calendar month, and with each such payment shall deliver to the Board of Trustees of the Fund a schedule relating thereto in such form as the Board of Trustees requires.

June 1, 2016 .......................................................$ 0.05

## SECTION 17

**DUES CHECK-OFF:** Commencing January 1, 2005 and continuing thereafter during the term of this Agreement, and in accordance with the terms of an individual and voluntary authorization for check off of membership dues in the form agreed upon by the parties hereto and permitted by the provisions of Section 302 (c) of the Labor Management Relations Act, as amended, the Employer agrees to deduct once each week from the wages of each Employee covered by this Agreement except first year apprentices, who signs such authorization five percent (5%) of his/her total package.

The amount deducted shall be remitted to the Union by the 15th day of the following month together with a statement setting forth the name, gross pay and hours worked of each Employee from whose wages the deduction is made and a copy of said statement shall also be furnished to the Cincinnati Building Trades Council.

The Employer further agrees to deduct the original initiation fee for any Employee who individually and voluntarily authorizes him to do so in writing.

June 1, 2021 .......................................................5% Total Package

## SECTION 18

**SURETY BOND:** The Union shall have the right to require an Employer not previously party to an Agreement with Plasterers Local Union #132, or an Employer who becomes delinquent in making payments to the various funds established by this Agreement, to post a bond in the amount of $5,000 through a recognized bonding company as surety for payments to such funds.

## SECTION 19

**LIQUIDATED DAMAGE ASSESSMENT:** The payment of all funds covered by this Agreement, presently created or hereinafter to be negotiated under the terms of this Agreement, are to be made monthly and are due fifteen (15) days after the close of the month. Any Employer failing to make such payment within twenty-five days after the close of the month will be deemed to be in violation of this contract.

THESE DELINQUENT AMOUNTS DUE, NOT PAID WITHIN TWENTY-FIVE (25) DAYS, SHALL AUTOMATICALLY INCUR A LIQUIDATED DAMAGE ASSESSMENT AGAINST THE EMPLOYER OF 10% OF THE AMOUNT SHOWN TO BE DUE, FOR EACH FUND, FOR THE REPORTING PERIOD IN QUESTION. Further, and upon five (5) days notice, the Union shall have the right to withhold its services for any non-payment to a fund approved under law. Monthly reports must be submitted each month, even though no hours have been worked.

## SECTION 20

**USE OF STILTS:** It is agreed that the use of stilts shall be permitted where it is safe. Safe will be defined as meaning that no one shall work on stilts if any safety hazards exist, including but not limited to dirty or littered floors, openings in walls or floors that are not properly protected, or other unprotected hazards. In the event a job is declared unsafe by the Plasterers on the job, or by the Union Representatives, the job shall cease until the unsafe condition is corrected and found acceptable to the Union.

In no way shall the use of stilts conflict with any approved state or federal provision regarding the use of stilts. No Employee covered by this Agreement shall be discharged for refusal to work on stilts.

The contractor shall supply stilts; they shall be Shujac or equal quality. The Employer shall have the right to require the Employee to sign a receipt when issued stilts, and if the stilts are not returned at the time of separation from employment, the Employer may deduct the cost of the stilts from the Employee's pay.  Maximum height of stilts shall be no more than 24 inches. Stilts shall be equipped with "feet" of skid-resistant material. Means shall be provided to securely fasten the stilts to the Employee's feet and legs.

## SECTION 21

**OVERTIME:** The first two (2) hours worked in excess of eight (8) hours a day when working a five (5) day week or ten (10) hours per day when working a four (4) day week, and the first eight (8) hours on Saturday will be paid for at time and one half of the Employee's basic hourly rate. All other work will be at two (2) times the basic hourly rate. Shift work and work in occupied buildings as provided herein will be an exception to this provision.

Work on the observed holidays and Sundays, shall be at the rate of two times the regular rate.

Any Employee who performs any work on or after established working hours Saturdays, Sundays, or Holidays shall notify the Business Representative before performing any work. Any Employer who intends to work his Employees after established working hours, Saturdays, Sundays or Holidays shall notify the Business Representative before performing any work.

When an Employee is provided with thirty-two (32) hours or less of employment during the regular work week, Monday through Friday, due to inclement weather, the Employee may be employed on Saturday of the same week, by the same Employer by whom he was employed during the regular work week at the regular straight time rate, not to exceed eight (8) hours. This provision applies only to exterior work covered by this Agreement and provided no one else on the job working under this Agreement is receiving more than the straight time rate. The Business Agent must be notified when work is to be performed under this provision. It is understood that an Employee's acceptance of work under this provision shall be on a voluntary basis and Employees shall suffer no recrimination for refusal to work under this provision.

**FINISHING A JOB:** When it is possible to finish a job by working up to one (1) hour overtime, journeymen shall be permitted to work at the straight time rate to complete the job.

## SECTION 22
**PAY DAY:** All journeymen must be paid weekly on the job, at or before quitting time, in lawful money of the United States, or may be paid by check, when mutually agreed between the Employer and the Employee. The weekly pay is to be accompanied by a stub showing gross earnings, hours worked (regular and overtime), itemized deductions and net pay. No more than three (3) days pay may be retained by an Employer for payroll purposes. Friday to be pay day. The Business Representative of the Union shall have the right to inspect the pay checks of any plasterer on request.

Employees laid off shall be paid off at the time they are laid off, or checks shall be mailed within three working days of the day laid off if mutually agreed. If the Employer requires an Employee to report to pick up his check, the Employee shall be paid one hour's pay. The Employer shall furnish a copy of a completed UC-400 Form provided by the Bureau of Employment Services to all Employees separated from their employment. The Union will furnish these forms to the Employer.

The Business Representative of the Union shall have the right to select a certified public accounting firm to examine the payroll records of the Employers as to Employees covered by this Agreement, so as to know that every Employee is receiving wages according to the Agreement. The cost shall be borne by the Union. If the Employer is found not to be in compliance with the wages and fringes of this Agreement, the Employer shall pay the cost of the audit.

## SECTION 23
**HOLIDAYS:** The observed holidays shall be New Year's Day, Decoration Day, July 4th, Labor Day, Thanksgiving Day, and Christmas Day. There shall be no work on Labor Day, except in special cases of emergency. When a holiday observed under this Agreement falls on Sunday it will be observed the following Monday.

Any Employee who may not wish to work on Martin Luther King Day shall be allowed the day off provided the Employee notifies the Employer one week before the day. There shall be no reprisal for exercising this right.

## SECTION 24
**INSURANCE:** Worker's Compensation Insurance, Unemployment Insurance and Federal Social Security Insurance: Employers agree to carry Unemployment Insurance, State Worker's Compensation Insurance, or other Liability insurance for the protection of

Employees, as well as Federal Social Security Insurance. Employer to furnish Union with a copy of Worker's Compensation Certificate.

## SECTION 25

**SCAFFOLDING:** Scaffolding shall be built in accordance with the applicable federal or state regulations. It is further agreed that both parties to this Agreement will comply with the applicable federal or state safety regulations. The Employer will furnish and the Employee will wear a hard hat as required by the applicable federal or state regulations. The Employer shall have the right to require the Employee to sign a receipt when issued a hard hat, and if the hard hat is not returned at the time of separation from employment, the Employer may deduct the cost of the hard hat from the Employee's pay. Mortar boards shall be elevated a minimum of 18 inches.

**Swing Scaffold:** Employees shall be paid the following additional amounts per hour when working on swing scaffold.

0 to 49 feet ............................No additional amount
Over 50 feet ..........................$0.75 (Seventy-Five cents) per hour

## SECTION 26

**SHELTER:** Employers shall provide a suitable room for changing clothes and safeguarding tools. Starting and quitting time shall be at the Tool Room. The Employee is to be properly attired and equipped for work. Sanitary drinking water in compliance with the applicable federal or state regulations shall be provided on each job.

## SECTION 27

**FOREMEN:** The foremen shall be selected by and be the agent of the Employer. When four or more journeymen are employed on a job, one shall be designated as foreman by the Employer and shall be paid one dollar ($1.00) per hour over the journeyman rate. When there are eight or more Employees on a job, the foreman shall negotiate with the Employer an amount per hour over the journeyman rate.  Any orders given to Plasterers on the job must be issued by the foreman or Employer.

## SECTION 28

**STEWARD:** The Union shall have the right to select a steward from among the workers employed on a construction project. The steward shall perform his/her duties so that there will be as little interference as possible with his/her regular work and the course of work generally. He/she shall not be discriminated against for the performance of such duties. Stewardship may be maintained at all times.
The Business Agent shall be notified if a steward is discharged or transferred.

## SECTION 29

**APPRENTICES:** In order to maintain a sufficient number of skilled journeymen, the necessity for the employment of apprentices is recognized by both parties. The training of apprentices shall be the joint responsibility of the Employers and the Employees, either on the job, or in duly accredited classes or schools, or both. A joint committee of Employers and Employees shall be maintained to supervise the carrying forward of apprenticeship training. Apprentices will be hired on a 1 to 1 and then a 1 to3 ratio of journeymen carried on the Employer's payroll when said apprentices are available.  The ratio of apprentices to journeymen shall be as follows:

1 apprentice to 1 journeymen
2 apprentice to 4 to 6 journeymen

3 apprentice to 7 to 9 journeymen
4 apprentice to 10 to 12 journeymen

No dues check-off monies will be withheld from apprentice's earnings during their first year of apprenticeship.

The pension contribution for apprentices will be one dollar ($1.00) less per hour paid on hours worked than Journeyman.

## SECTION 30
**SUPERANNUATED JOURNEYMAN:** The Employer recognizes that because of advanced age or impaired physical ability certain journeymen may wish to be classified as superannuated and be granted permission to seek employment at 85% of the hourly wage rate. On jobs where it is practicable to do so, the Employers will cooperate with the Business Agent in placing these superannuated workers.

## SECTION 31
**TOOLS AND CLOTHING:** Journeymen shall furnish the following tools in good condition: Hawk, trowels, brushes, floats of kind to do the work employed upon, pointers, hatchets, and necessary tools for ornamental work when so employed. All journeymen and apprentice plasterers shall be required to wear standard plasterer's white clothing. On failure to dress in proper attire the second day, the plasterer or apprentice shall not be permitted to work.

## SECTION 32
**CLEAN-UP TIME:** When Employees are laid-off they must be paid in full and allowed fifteen (15) minutes to pack up tools. Employees are allowed ten (10) minutes each day before quitting time to clean tools.

## SECTION 33
**WORKING EMPLOYER:** Not more than one member of a firm shall be permitted to work with plastering tools.

## SECTION 34
**SUBCONTRACTING:** In the event that the union is unable to provide a competent Union Subcontractor, the Employer shall have the right to subcontract work covered by this Agreement to Subcontractors regardless of their affiliation to the union and/or this Agreement. the Employer shall give written notice to the Union once a need, occurs and the Union shall have, 48 hours to demonstrate that it can provide a Union Subcontractor.

## SECTION 35
**NON-DISCRIMINATION:** The Employer and the Union agree that they will not discriminate against any Employee or applicant for employment nor in the referral of applicants for employment because of race, creed, color, sex or national origin. The Employer and the Union agree to comply with the provisions of Executive Order 11246 and other applicable federal, state, county and city regulations pertaining to equal employment opportunity. The Employer and the Union further agree that upon the request of either party, the other party will furnish any statements or documents necessary in meeting the requirements of such equal employment opportunity regulations.

## SECTION 36

**MOST FAVORED NATIONS:** The Union agrees that if it grants any other Employer, (with the exception of the specialty contractors), more favorable terms and conditions (including wages) than those contained herein, those more favorable terms and conditions shall automatically be extended to Employers party to this Agreement.

## SECTION 37

**PLASTERING AND LATHING JOINT INDUSTRY BOARD:** There shall be a Plastering and Lathing Joint Industry Board composed of Association members and members of Local #132 Executive Board. This Board shall meet as deemed necessary by the parties to discuss industry problems. To be discussed by the Board is a provision that a maintenance rate work rate may be established by Agreement between the Association and the Union for a facility where such maintenance work is not currently being done by Employers covered by this Agreement.

Management and labor agree that when recommended practices in the industry are ignored, efforts will be made to make the owner and/or architect aware of recommended practices. Such notification shall be by the Plastering and Lathing Joint Industry Board.

## SECTION 38

**LETTERS:** The Employer agrees to furnish the Union with reasonable promptness upon request, a statement on company letterhead, setting forth the wage rates paid to Employees covered by this Agreement on jobs within the territorial jurisdiction of this Agreement, for the purpose of establishing prevailing wage rates for any area of the jurisdiction in question.

## SECTION 39

**CONTRACT PERIOD:** This Agreement shall remain in full force and effect until midnight, June 30, 2024 unless the Employer or the Union notifies the other party to the contrary by registered mail at least sixty (60) days, but not more that ninety (90) days prior to June 22, 2024, or the expiration date of any subsequent Agreements, it will adopt and be bound retroactive to the latest expiration date, by any Agreement between the Union and the Plasterer Employers Division, AGC, following the giving of such notice.

If either of the notices referred to in the above paragraph are not timely sent by either party, this Agreement or any subsequent Agreement shall continue in full force and effect following the Agreement's expiration date until amended or changed by negotiation of the parties or until impasse occurs.

## SECTION 40

**LENGTH OF AGREEMENT:** It is expressly understood and agreed that the above constitutes a Working Agreement. This Agreement shall become effective on July 1, 2021 and shall remain in full force and effect until 12:01 A.M. the 30th day of June, 2024. It shall continue in full force and effect from year to year thereafter unless written notice of desire to terminate or amend this Agreement is served by either party upon the other at least sixty (60) days prior to the expiration or at least sixty days prior to the annual expiration date of any subsequent year thereafter.

## SECTION 41

**AGREEMENT:** This Agreement shall be effective when signed by the individual Employer and the Union.

## SECTION 42

**JETA/FETA AGREEMENTS:** The parties to this Agreement agree to be bound by the terms and conditions of the Journeyman Employment Training Agreement and the Female Employment and Training Agreement for the Greater Cincinnati Area Construction Industry endorsed by Building Trades Council of Cincinnati and Allied Construction Industries and to the implementation of these Agreements in accordance with their terms.

## SECTION 43

**DRUG TESTING:** The parties to this Agreement agree to cooperate in Employee drug testing when deemed necessary or required by a particular owner or contractor, as long as all Employees for a particular job are tested.

## SECTION 44

**SEXUAL HARASSMENT:** It is the policy of the Employer and the Union to strictly prohibit any conduct which constitutes sexual harassment.

## SECTION 45

**SAFETY TRAINING/UPGRADING:** All journeymen and apprentices employed under this Agreement shall complete one (1) safety or continuing education course, as selected by the Labor/Management Committee, during each contract year (June 22 through June 21).

## SECTION 46

**LOCAL #132 PROMOTIONAL/MARKETING FUND:** In an effort to promote and market the plasterers trade, a Promotional/Marketing Fund was established in 2007. A ten cent ($0.10) per hour contribution will be made to the Promotional/Marketing Fund. All requests for funds or expenditures from the fund are at the sole discretion of Local #132 and shall go through the Local #132 governing Committee and /or the Local #132 Executive Board for consideration and final approval.

## SECTION 47

**CELL PHONE USE:** The Employees will not use a cell phone for any use during the working hours other than in emergencies. Cell phones may be used at lunch and during breaks.

We certify that this is a TRUE COPY of the
"FORM OF AGREEMENT."

_____

Kevin Gowsell, Business Representative
Plasterers Ohio Local #132
10490 North State Street, Harrison Ohio 45030
Phone: (513) 221-1313   Fax: (513) 221-1374

_____

JORDAN VOGEL, Executive Director
Plasterer Employers Division
Walls & Ceiling Contractors Association of Greater Cincinnati
3 Kovach Drive, Lockland, OH  45215
Phone: (513) 221-8020   Fax: (513) 221-8023

IN WITNESS WHEREOF we, the undersigned, have executed this AGREEMENT on the _____
day of _____, 2_____.

LOCAL UNION #132, OPERATIVE PLASTERERS AND CEMENT MASONS INTERNATIONAL
ASSN.

_____

By

_____

Printed Name

_____

Email Name of Employer

_____

Address

_____

City, State & Zip

_____

Phone                              Fax

_____

Date